CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 0 1 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JASON HAMM-BEY,<br>    Petitioner, | )<br>)<br>) Civil Action No. 7:05-cv-00483<br>) |
| v. | ) **MEMORANDUM OPINION**<br>) |
| GENE JOHNSON,<br>    Respondent. | ) By: Hon. James C. Turk<br>) Senior United States District Judge |

Petitioner Jason Hamm-Bey, a Virginia inmate proceeding pro se, brings this action as a petition for a writ of habeas corpus, pursuant to 28 U.S.C. §2254. Hamm-Bey asserts that at a disciplinary hearing on August 28, 2004, while he was confined at Dillwyn Correctional Center ("DWCC"), he lost 90 days of earned good conduct credits, in violation of his due process rights. The respondent has filed a motion to dismiss to which petitioner has responded, making the matter ripe for the court's consideration. Upon review of the record, including the audio tape of the disciplinary hearing at issue and the report of the related investigation by the Virginia Department of Corrections ("VDOC") Department of Internal Affairs ("IA"), the court concludes that the motion to dismiss must be granted.

I.

The record reflects the following sequence of events. Starting in March 2004, while Hamm-Bey was housed at Deep Meadow Correctional Center ("DMCC"), officials investigated tips that inmates there were trafficking in illegal drugs. Shortly thereafter, authorities transferred Hamm-Bey to DWCC. In mid-August 2004, prison authorities charged Hamm-Bey with "conspiracy or making plans to commit possession of unauthorized or unprescribed drugs," in violation of Division Operating Procedure (DOP) 861.198A and DOP 861-122A. Hamm-Bey pled not guilty to the charge and requested the following evidence for the disciplinary hearing: 1) video-taped surveillance of the alleged drug activities; 2) actual drugs (if any) confiscated; 3) drug test results; 4) taped phone conversations indicating drug transactions or conspiracies; 5) witness statements from petitioner's counselor (Mr. Mikionis), inmate David Jefferies, and petitioner's wife.

1

Inmate Hearing Officer Janet Bain ("IHO") conducted Hamm-Bey's disciplinary hearing on August 28, 2004. The IHO informed Hamm-Bey that he would not have access to any of the evidence he had requested because it was all confidential and/or irrelevant or did not exist; that a statement from Mr. Mikionis was denied as irrelevant; and that the other requested witnesses, including Hamm-Bey's wife, had not submitted statements in time for the hearing. Lt. Butler, the reporting officer, testified concerning three statements from confidential informant inmates, one dated January 2004 at DMCC and two dated August 18, 2004. Butler stated that all three witnesses had worked as confidential informants and had provided reliable information in the past. The IHO also read into the record a prepared statement by the IA investigator, Sgt. Sink, with all inmate names redacted. The report indicated that starting in March 2004, numerous informants had notified IA officials of drug trafficking in which Hamm-Bey was involved. Sink also stated that one informant in particular had given him reliable information in the past. Sink expressed his concern that if Hamm-Bey learned the identities of these informants, he would try to have them killed, in prison or on the street.

Hamm-Bey objected to the relevance of the January 2004 statement, since it concerned events at DMCC, objected to the reliability and truthfulness of the informants' statements, and protested the IHO's denial of his requested evidence. He also complained that he should not be found guilty when authorities did not corroborate the other inmates' information with video evidence, drug test results, or evidence of letters or telephone calls Hamm-Bey had used to arrange for drug smuggling or to collect payment.

The IHO found Hamm-Bey guilty as charged, "based on testimony of reporting officer, confidential statements of reliable informants, and the summation" submitted by Sgt. Sink and penalized Hamm-Bey with fifteen days in isolation, the loss of 90 days of earned good conduct credits, and referral to the Institutional Classification Authority (ICA) to be reclassified and transferred to a higher security facility. The ICA conducted a hearing on August 31, 2004. Based on the disciplinary conviction, the ICA reclassified Hamm-Bey to Security Level 4 and decreased

his good conduct time earning rate from a Level 1 to a Level 4, earning no good time. These changes ultimately pushed back Hamm-Bey's estimated release date from December 17, 2006, to May 11, 2007.

Hamm-Bey filed a habeas petition in the Supreme Court of Virginia, and by order dated April 27, 2005, that court dismissed the petition as "frivolous." Hamm-Bey here raises these four claims for relief:

1. Petitioner's sentence was unlawfully extended when his earned good conduct time was taken in violation of due process and equal protection.[1]

2. Petitioner's sentence was unlawfully extended when his good conduct credit earning rate was reduced.

3. The hearing officer failed to make an independent assessment of the reliability of the informants, in violation of due process and Division Operating Procedure (DOP) 861.16.4.

4. The evidence was insufficient to support a guilty finding at petitioner's disciplinary hearing.

II.

As Hamm-Bey presented all of his habeas claims before the Supreme Court of Virginia in habeas proceedings, he has exhausted his state court remedies, as required under 28 U.S.C. § 2254(b). Contrary to Hamm-Bey's assertions, the brief order by the Supreme Court of Virginia, dismissing his habeas petition as frivolous, constitutes an adjudication on the merits for purposes of federal habeas review. See Bell v. Jarvis, 236 F.3d 149, 163 (4th Cir. 2000). As such, this court may grant relief only upon finding that the Supreme Court of Virginia's adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[1] Hamm-Bey fails to demonstrate that he was treated differently than similarly situated inmates; even if he could show a difference, however, he fails to state any equal protection claim because the IO's rulings were rationally related to legitimate prison interests. See Moss v. Clark, 886 F.2d 686 (4th Cir. 1989) (officials may treat similarly situated inmates differently, provided that the basis for the different treatment is rationally related to a legitimate interest of the state).

3

§ 2254(d). "Under §2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000). Moreover, the Virginia court's ruling cannot be deemed unreasonable merely because it does not cite established United States Supreme Court precedent on an issue. See Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

When an inmate is faced with the loss of earned good time credits, prison officials must provide him with limited procedural protections, including (1) advance written notice of the charge against him; (2) a written record of the disciplinary committee's findings and the evidence relied on in convicting him; (3) the right to call witnesses and present documentary evidence in his defense, "when consistent with institutional safety and correctional goals"; and (4) to have the charges against him decided by a fair and impartial tribunal. Wolff v. McDonnell, 418 U.S. 539 (1974). Because a disciplinary hearing is not a criminal trial, however, the standard of proof is reduced such that due process requirements are met if the decision to revoke good time credits is supported by "some evidence," also referred to as "a modicum of evidence." Superintendent v. Hill, 472 U.S. 445, 455 (1985). To determine whether this standard is satisfied, the federal habeas court need not examine the entire record, independently assess the credibility of witnesses, or weigh the evidence. Id. The court evaluates only the procedural aspects of the hearing and determines whether "some evidence" supports the conviction.

It is well established that an inmate does not have a due process right to be informed of the identity of a confidential informant if providing him with such information would compromise prison security concerns. Baker v. Lyle, 904 F.2d 925, 933 (4th Cir. 1990). Even when the hearsay statement of an unidentified informant represents a primary part of the evidence in support of a disciplinary conviction, due process requirements are satisfied if any other evidence in the record supports the decision to take the inmate's good time. Id. (finding that hearing officer's statement

4

that confidential informant was a "very reliable source" and additional evidence adduced during disciplinary appeal process regarding prisoner's previous escape attempt satisfied "some evidence" standard under Hill).

Other circuit courts of appeal have held that a disciplinary hearing board or officer "must accompany the use of a confidential informant's testimony with an indication that the informant is reliable." See Whitford v. Boglino, 63 F.3d 527, 535 (7th Cir. 1995) (citing other cases). Reliability can be established by the following methods: (1) the oath and testimony of the investigating officer at the hearing as to the truth of his report concerning the confidential informant's statement, (2) corroborating testimony, (3) a statement on the record that the hearing officer has firsthand knowledge of the sources and considers them to be reliable based on a past record of reliability, or (4) an in camera review of material documenting the investigator's assessment of the credibility. Id.

### III.

Claims 1 and 3 of Hamm-Bey's petition center on petitioner's assertion that the IHO did not make an independent finding that the confidential informants or their statements were reliable. It is clear from the record, however, that the IHO dealt appropriately with the confidential informants' testimony. First, it is clear from Sgt. Sink's report that security concerns justified keeping the informants' identities confidential in this case. Second, the IHO included on the written report a finding that the informants were reliable, and the record contains ample support for this finding. Multiple informants at different prisons separately volunteered information or responded to interviewers that Hamm-Bey was involved in arranging for drugs to enter the prison through the visiting room for distribution to inmates. These informants' statements corroborated each other to some extent, and officers verified items of information from their statements. The statements also came from two different prisons where Hamm-Bey had been incarcerated, making any sort of frame up scam unlikely and further supporting a finding of reliability. In addition, both Officer Butler and Sgt. Sink reported that the informants had provided reliable information in the past. As these indicia

5

Case 7:05-cv-00483-JCT-mfu   Document 14   Filed 02/01/06   Page 5 of 7   Pageid#: 119

of reliability satisfy even the more exacting requirements in Whitaker and similar cases, the court finds no due process error under Baker related to the use of confidential informant testimony against Hamm-Bey.

Moreover, without detailing here the exact nature of the evidence against Hamm-Bey, the court is satisfied from the record that the IHO conducted the hearing in full accord with Wolff and that she had more than a "modicum of evidence" on which to convict Hamm-Bey of planning to possess illegal drugs in prison. Based on the foregoing, the court concludes that the disciplinary proceedings on August 28, 2004, comported with federal due process protections under Hill and Baker.[2] Therefore, the court finds that Hamm-Bey's Claims 1, 3, and 4 (alleging insufficient evidence to support the conviction) are without merit.

In Claim 2, Hamm-Bey asserts that officials wrongfully deprived him of the ability to earn good conduct time based on a February 11, 2004, memorandum from VDOC Deputy Director John Jabe that did not apply to Hamm-Bey. The memo stated that all inmates found guilty of violating DOP 861, Offense Code 122(d) would be reclassified to Security Level 4, earning no good time. Hamm-Bey was not convicted under this DOP section.

These allegations fail to state any federal habeas claim. First, Hamm-Bey had no protected liberty interest in being assigned to or maintaining a specific rate of earning good conduct time. DeBlasio v. Johnson, 128 F. Supp.3d 315, 329 (E.D. Va. 2000), aff'd, 13 Fed. Appx. 96, 2001 WL 721398 (4th Cir. 2001)(unpublished). Therefore, Hamm-Bey's reclassification proceedings did not trigger any federal due process protection. Moreover, Jabe's memorandum is not the only basis on which inmates can be reclassified to Level 4. Hamm-Bey admits that the reduction in his rate occurred only after a classification hearing. As the change in Hamm-Bey's good time rate did not in any way affect a federally protected right, it did not give rise to any claim for relief under § 2254.

---

[2] Hamm-Bey's assertion that the officer violated the DOP regarding confidential informants fails to state any independent ground for federal habeas relief. See, e.g., Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) (state's failure to abide by its own law as to procedural protections is not a federal due process issue).

6

IV.

For the reasons stated, the court cannot find that the Supreme Court of Virginia's disposition of Hamm-Bey's habeas claims was contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of facts. As such, the court must grant the motion to dismiss, pursuant to § 2254(d).[3] An appropriate order shall be issued this day.

The petitioner is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a circuit court of appeals justice or this court issues a certificate of appealability, pursuant to 28 U.S.C. §2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. §2253(c)(1). Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, the Court declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If petitioner intends to appeal, petitioner must file a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to petitioner and to counsel of record for the respondent.

ENTER: This _1st_ day of _February_, 2006.

_/s/ James C. Turk_
Senior United States District Judge

---

[3] The court also finds Hamm-Bey's motion for an evidentiary hearing to be without merit. The record clearly indicates that he received all required federal procedural protections during the disciplinary hearing, and an evidentiary hearing is thus unnecessary to disposition of his petition.

7